**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONEY RICHARDSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No.: 5:25-cv-05718-JMG |
| | : | |
| HYUNDAI CAPITAL AMERICA INC., | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                 **July 31, 2026**

## I.   OVERVIEW

This case arises from the credit reporting furnished by Hyundai Capital America Inc. ("HCA" or "Defendant") to the consumer credit reporting agencies ("CRAs"). Doney Richardson ("Richardson" or "Plaintiff") alleges that Defendant willfully and negligently reported false information concerning Plaintiff's consumer credit history, failed to conduct a reasonable investigation after being notified by the nationwide CRAs of Plaintiff's disputes, and breached its contractual obligations to resolve disputes through binding arbitration. As a result, Plaintiff's credit score allegedly dropped by approximately 33 points in September 2024, which placed him in a B-tier credit classification. According to Plaintiff, Defendant's actions and the corresponding score reduction directly caused Plaintiff's denial of a home equity line of credit application with Navy Federal Credit Union in July 2025.

Following the Court's April 6, 2026, Memorandum Opinion and Order, granting in part and denying in part Defendant's Motion to Dismiss, Plaintiff filed a Second Amended Complaint to supplement the allegations in the Amended Complaint and cure the deficiencies identified with respect to the dismissed claims. Defendant now moves to dismiss the Second Amended Complaint

for failure to state a claim. For the reasons set forth below, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is **DENIED**.

## II.    BACKGROUND

*Pro se* Plaintiff, Doney Richardson, held a consumer lease account with Defendant in relation to a 2021 Kia K5. Sec. Am. Compl. at 2. Plaintiff claims that Defendant maintained and controlled all relevant information, including but not limited to account records, payment history, status information, payoff information, and reporting associated with the account. *Id.* Plaintiff further claims all payments made for the leased car from March to May 2024 were made within the contractual grace period, and Defendant's account and billing records reflect that. *Id.* at 3.

On or about June 7, 2024, Plaintiff traded in the leased vehicle and was approved for a new 36-month car lease agreement with Defendant. *Id.* As part of this transaction, Defendant was required to fully pay off the prior lease account. *Id.* Plaintiff claims that on or about June 13, 2024, the lease account was paid and satisfied to a zero balance. *Id.* Plaintiff also contends that Defendant's account and billing records reflect that the account was timely paid and satisfied. *Id.* Plaintiff further claims that at all relevant times surrounding the June 2024 transaction, Defendant maintained exclusive control over all relevant account information relating to Plaintiff's prior lease and that Defendant had direct access to all information required to evaluate whether Plaintiff was delinquent in his payments. *Id.*

In September 2024, Plaintiff reviewed his consumer credit reports and discovered that the initial lease account remained listed as open with a zero balance and active payment history, creating the impression that the lease was still ongoing despite having been fully paid off in June 2024. *Id.* at 4. Plaintiff contacted Defendant to report the issue and explained that the inaccurate reporting was negatively affecting his debt-to-income ratio because it created the appearance of an

2

additional lease obligation. *Id.*  Shortly after, Defendant's Customer Care Supervisor, Betty Martinez, contacted Plaintiff, acknowledging the reporting error and advising that they had investigated the issue and would correct the account status. *Id.* Within days, the account status was updated to reflect that it was closed. *Id.* However, the account was then reported as having a 30-day delinquency for June 2024. *Id.*

Defendant then made clear to Plaintiff that it would not be removing the 30-day delinquency for June 2024. *Id.* This prompted Plaintiff to submit the dispute to binding arbitration in accordance with the mandatory arbitration provision contained in the lease agreement. *Id.* On or about October 1, 2024, Plaintiff filed a formal demand for arbitration with the American Arbitration Association ("AAA") and paid all consumer fees required to initiate arbitration. *Id.* On or about November 17, 2024, the AAA notified Defendant that its required share of fees was due by December 17, 2024. *Id.* at 5. Defendant failed to pay its share of fees, which led the AAA to close the case and force Plaintiff to pursue its claims in this Court. *Id.*

In February 2025, the 30-day delinquency was removed from Plaintiff's credit reports but reappeared in April 2025, with inconsistent reporting across the CRAs. *Id.* Equifax and Experian reported a 30-day delinquency for June 2024 while TransUnion reported a 30-day delinquency for May 2024. *Id.* Following this, Plaintiff once again notified Defendant of the inaccurate reporting. *Id.* Then, in or about May 2025, Plaintiff filed formal disputes with the three major CRAs. *Id.* at 6. This prompted each agency to transmit Plaintiff's dispute to Defendant through the Automated Consumer Dispute Verification ("ACDV") system. *Id.*

Following this reported dispute, each CRA reinvestigated the disputed information, resulting in inconsistent outcomes. *Id.* Experian removed the June 2024 delinquency, TransUnion deleted the entire tradeline associated with Plaintiff's account, and Equifax verified the

delinquency as accurate. *Id.* The verification of Plaintiff's delinquency as accurate by Equifax was based directly on information provided by Defendant. *Id.* at 7. Since Defendant was the only entity with access to Plaintiff's account and billing information in relation to the disputed information, any verification of the disputed information necessarily depended on Defendant's reporting. *Id.*

On or about July 2025, Plaintiff applied for a home equity line of credit ("HELOC") in the approximate amount of $140,000. *Id.* at 8. This amount represented approximately 95% loan-to-value ("LTV") based on the value of Plaintiff's home. *Id.* Plaintiff's application was evaluated by his existing credit profile, credit report, and home appraisal, which included his lowered credit score due to the alleged inaccurately reported 30-day delinquency. *Id.* Plaintiff was placed in a B-tier classification because of his credit score at the time, which limited Plaintiff's maximum loan-to-value ratio to approximately 85% under the lender's underwriting guidelines. *Id.* So, when Plaintiff applied with a 95% loan-to-value ratio, he was denied due to the value of his collateral, which is represented by Exhibit H.[1] *Id.* Because the applicable loan-to-value limitation was tied to that credit tier, Plaintiff's credit score directly restricted approval at the requested financing level. *Id.* Plaintiff subsequently submitted a reconsideration application within the permitted timeframe with the same credit report, same credit score, and same property appraisal and was approved. *Id.* The only difference was the reduction in requested loan-to-value from approximately 95% to 85%. *Id.*

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[1] "Exhibit H" is attached to Plaintiff's Original Complaint. Exhibit H credit-denial notice issued by Navy Federal Credit Union advising Plaintiff that his mortgage application was denied. The notice identifies that principal reason for denial as "value or type of collateral not sufficient."

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV.   ANALYSIS

Plaintiff filed the Second Amended Complaint to address the deficiencies identified in the Court's prior Order. Defendant again filed a Motion to Dismiss, arguing that Plaintiff's Fair Credit Reporting Act ("FCRA") claim rests on insufficiently pled conclusory allegations, and that Plaintiff's claim is contradicted by Exhibit H. However, the Court concludes that Plaintiff's extended narrative and explanation in the Second Amended Complaint now alleges facts sufficient to state a plausible claim for relief. The Second Amended Complaint cures the deficiencies identified in the Court's prior Orders by providing additional factual allegations that explain the alleged contradiction and plausibly support both an unreasonable investigation and causation.

### A.  Plaintiff Has Plausibly Alleged an Unreasonable Investigation

Defendant contends that the FCRA claim in the Second Amended Complaint is based on conclusory allegations. *See* Def .'s Mot. to Dismiss Sec. Am. Compl. at 6-8. Specifically,

Defendant argues that Plaintiff's allegations regarding an unreasonable investigation are undermined by the corrections made by TransUnion and Experian following HCA's investigation. *Id.* ("Defendant's investigation resulted in the removal of the disputed information from two CRAs, undermining any inference" offered in Plaintiff's allegations."). *Id.* Defendant further argues that the failure of one CRA to update its reporting, combined with HCA's alleged failure to respond to Plaintiff's direct dispute, is insufficient to state an actionable claim under the FCRA. *Id.* Finally, Defendant contends that the challenged allegations are insufficiently pled and fail to satisfy the basic pleading requirement under Rule 8. *Id.*

Plaintiff argues that Defendant's handling of a disputed credit report entry failed to comply with the FCRA because Defendant did not conduct a reasonable investigation to modify the inaccurate information. *See* Sec. Am. Compl. at 9–11. Plaintiff alleges that he submitted formal disputes with each of the three major CRAs: Equifax, Experian, and TransUnion. *Id.* The CRAs then notified Defendant of the dispute through the ACDV system. *Id.* Plaintiff then alleges that Defendant verified the disputed delinquency as accurate to Equifax and that Defendant's records reflect timely payments for the period in which Defendant reported a 30-day delinquency. *Id.* Even after receiving notice of the disputed information, Defendant failed to properly investigate its records and verified the disputed delinquency as accurate to Equifax. *Id.* Plaintiff alleges that Defendant failed to conduct a reasonable investigation of the dispute. *Id.*

At the pleading stage, the Court should consider whether the pleadings allege sufficient factual information from which to reasonably infer that Defendant is plausibly liable under the FCRA. *See Lewis v. Cap. One Bank*, No. CV 21-5524, 2022 WL 17364641 (E.D. Pa. Dec. 1, 2022). To state a claim under FCRA § 1681s-2(b), Plaintiff must plead facts supporting a conclusion that Defendant furnished incomplete or inaccurate information to the CRAs. *See*

*Seamans v. Temple University*, 744 F.3d 853, 866-67 (3d Cir. 2014). Plaintiff must further plead that he "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information. *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 2016 WL 3473345, at *6 (E.D. Pa. June 24, 2016). "Absent allegations of fraud, identity theft, or other issues not identifiable from the face of the records, the furnisher need not do more than verify that the reported information is consistent with the information in its records." *Martin v. Convergent Outsourcing, Inc.*, 2014 WL 866499, at *6 (M.D. Pa. Mar. 5, 2014).

Here, Plaintiff's allegations indicate that he disputed the accuracy of the reported 30-day delinquency with multiple CRAs. *See* Sec. Am. Compl. at 10–11. Second, Plaintiff alleges the agencies transmitted notice of Plaintiff's disputes to Defendant. *Id.* Lastly, Plaintiff's Second Amended Complaint contains sufficient facts describing Defendant's failure to review and investigate the dispute with its own records to properly modify the inaccurate information. *Id.* According to Plaintiff, Defendant verified the inaccurate information to Equifax rather than correcting it. *Id.* Taken together, and accepting the allegations as true at this stage, the pleadings adequately support a plausible inference that Defendant's investigation was unreasonable.

### B. Plaintiff Has Plausibly Alleged Causation

Defendant next argues that Plaintiff's claim lacks merit because Plaintiff's allegations are contradicted by the credit-denial statement attached to the Original Complaint, and therefore Plaintiff has not adequately pleaded causation. *See* 1-1, Ex. H. According to Defendant, Exhibit H demonstrates that the denial resulted from insufficient collateral value rather than any conduct attributable to Defendant. *Def.'s Mot. to Dismiss* Sec. Am. Compl. at 6-9. Defendant contends that

the Court should credit Exhibit H over Plaintiff's allegations because, in Defendant's view, Exhibit H directly contradicts Plaintiff's theory. *Id.* Defendant further advances this argument by explaining that Plaintiff was later approved with the same credit score after lowering the requested loan amount, which Defendant argues confirms that collateral value, rather than HCA's reporting, drove the initial denial. *Id.*

Plaintiff, by contrast, contends a causal chain linking Defendant's inaccurate reporting to the denial of his credit application with Navy Federal Credit Union. *See* Sec. Am. Compl. at 8. In July 2025, Plaintiff applied for a home equity line of credit with Navy Federal Credit Union in the approximate amount of $140,000. *Id.* This amount represented roughly 95% loan-to-value ("LTV") based on the appraised value of Plaintiff's home. *Id.* Plaintiff alleges that the application "was evaluated using [his] Equifax credit report, which contained the inaccurately reported 30-day delinquency" along with "[his] existing credit profile and home appraisal." *Id.* At the time of the application, Plaintiff alleges that his credit score was approximately 707, placing him within a B-tier credit classification. *Id.*

Plaintiff further alleges that "Portia Nared, an Equity Production Supervisor with Navy Federal Credit Union, confirmed that [his] credit score determined the B-tier classification and resulting loan-to-value limitation." *Id.* Plaintiff also contends that "under the lender's underwriting guidelines, a B-tier classification limited [his] maximum loan-to-value ratio to approximately 85 percent." *Id.* Plaintiff further contends his credit score "directly restricted approval at the requested level." *Id.*

Plaintiff then submitted a timely reconsideration application within the permitted timeframe, relying on "the same credit report, same credit score, and same property appraisal, and did not involve any additional hard inquiry," with the only difference being the "reduction in

requested loan-to-value from approximately 95 percent to 85 percent." *Id.* This application was approved. *Id.* According to Plaintiff, because the applicable loan-to-value limitation was tied to his credit tier, his credit score determined whether he qualified for the requested financing level. *Id.* Plaintiff's Second Amended Complaint lays out these two applications to explain how Defendant's "inaccurate and misleading reporting directly affected Plaintiff's credit score, which determined his credit tier, which dictated the loan-to-value limitation, which resulted in denial at the requested level and materially less favorable loan terms." *Id.* at 9. Taken as true at this stage, the allegations support Plaintiff's theory that Defendant's conduct caused the denial of the initial application.

The Court previously ruled that Plaintiff did not plausibly allege causation because the Complaint and the Amended Complaint contained no factual matter supporting Plaintiff's assertion that his application with Navy Federal Credit Union was denied because of Defendant's inaccurate reporting. Plaintiff then alleged only that "the application was denied because Plaintiff's credit score–reduced by 33 points due to Kia's false reporting–fell below underwriting thresholds." Am. Compl. At 7-8. However, the denial letter, Exhibit H, stated the application was denied due to "value or type of collateral not sufficient," and Plaintiff offered no explanation reconciling that contradiction. In the absence of such explanation, the Court declined to accept Plaintiff's allegations as true.

The Second Amended Complaint now offers the factual detail previously lacking and plausibly alleges causation linking Defendant's inaccurate reporting to the denial of Plaintiff's credit application. For purposes of causation, damages must be causally linked to a furnisher's failure to conduct a reasonable investigation. Courts in this Circuit require more than a bare

asserted of harm. *See Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 610 (E.D. Pa. 2008) (discussing that plaintiff's injury must be caused by the furnisher's conduct).

Here, Plaintiff alleges that Defendant's inaccurate reporting caused his credit score to drop, placing him in a B-tier classification. Under Navy Federal Credit Union's underwriting guidelines, a B-tier borrower is subject to a maximum loan-to-value ratio of approximately 85 percent. Plaintiff's first application sought financing at a 95% loan-to-value ratio. Because Plaintiff's tier imposed a hard cap at 85%, the lender could not approve the requested amount regardless of the underlying collateral. Plaintiff's application materials held no weight because the lender's guidelines limited his maximum loan-to-value ratio due to his credit tier. The inaccurate reporting by Defendant led to strict limitations being placed on Plaintiff's application that caused his application to be denied when he attempted to apply with a loan-to-value ratio outside of these limitations. An applicant with the same materials but with a higher credit score may have been allowed to apply with a 95% loan-to-value ratio because those in certain tiers are permitted to do so. The facts pled by Plaintiff plausibly establish that Defendant's inaccurate reporting caused Plaintiff's credit score to drop, which in turn determined his credit tier, which dictated the applicable loan-to-value limitation, which ultimately resulted in his application being denied by Navy Federal Credit Union.

Plaintiff has also explained why Exhibit H does not contradict his allegations. Although the stated reason for denial was "insufficient collateral," Plaintiff alleges that this reinforces his causation theory rather than contradicting it because the lender does not evaluate collateral in isolation. Instead, it determines whether the collateral is sufficient to support the requested loan under its underwriting guidelines for the particular applicant. The same collateral could be sufficient for one applicant in a higher tier but insufficient for another applicant whose credit score

imposes a lower loan-to-value cap because Navy Federal Credit Union has differing maximum loan-to-value ratios dependent on the applicant's tier. So, even though the stated reason for denial is collateral, the collateral was considered insufficient not because of the value of the collateral alone, but because Plaintiff's credit score placed him in a tier that did not qualify for the requested loan-to-value ratio. At this stage, the Court must accept Plaintiff's well-pleaded explanation, which plausibly reconciles Exhibit H with his causation theory.

The Court is not persuaded by Defendant's argument that Exhibit H forecloses Plaintiff's allegations. Plaintiff has now explained why Exhibit H does not contradict his theory and, indeed, why it is consistent with it. Additionally, Plaintiff has sufficiently pled that the inaccurate and misleading reporting by the Defendant directly affected his credit score, placing him in a lower credit tier that imposed a more restrictive loan-to-value limitation and ultimately led to the denial of the requested financing and less favorable loan terms. The Court is satisfied with the addition of facts and explanations in Plaintiff's Second Amended Complaint that sufficiently establish a theory of causation and explain the contradiction between his allegations and documentation.

## V.    CONCLUSION

Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that the Second Amended Complaint now plausibly alleges a violation of the FCRA. Plaintiff has supplied sufficient factual matter establishing a coherent causal chain between Defendant's alleged inaccurate reporting, the resulting drop in Plaintiff's credit score, his placement in a more restrictive credit tier, corresponding loan-to-value limitation, and the denial of his requested financing. Plaintiff has also adequately explained why Exhibit H does not contradict his causation theory. Because Plaintiff has remedied the deficiencies identified in the Court's prior Order and has now plausibly alleged damages causally linked to Defendant's failure to conduct a reasonable

investigation, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No.

22) is **DENIED**. An appropriate Order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge